1    HONORABLE RONALD B. LEIGHTON

2

3

4

5

6              UNITED STATES DISTRICT COURT
7              WESTERN DISTRICT OF WASHINGTON
                          AT TACOMA
8

9    HUI SON LYE and DAVID LYE,              CASE NO. 3:11-cv-05983-RBL
     husband and wife,
                                             ORDER ON DEFENDANTS'
10                        Plaintiffs,        MOTION FOR SUMMARY
                                             JUDGMENT
11            v.

12   CITY OF LACEY, et al.

13                        Defendants.

14

15        THIS MATTER is before the Court on remaining Defendants' Motion for Summary

16   Judgment.  The Court previously addressed the factual background and the legal viability of

17   Plaintiff[1] Lye's claims in dismissing her constitutional, conspiracy, outrage, defamation, and

18   intentional tort claims against the Church Defendants [Dkt. #26].  The City of Lacey Defendants

19   now seek dismissal of Lye's remaining claims against them [Dkt. #31].

20        In 2009, Lye began voicing her concern that the Sacred Heart Catholic Church was not

21   giving its Mass in Korean, despite her claim that the Archbishop had so instructed.  The Church

22   _____

23        [1] Hui Son Lye and David Lye brought this action together; however, David Lye does not claim to be
     personally involved in any of the events in question. The remainder of this order will refer to Hui Son Lye as a
24   singular plaintiff.

1   claims (and demonstrates) that Lye engaged in "threatening and harassing actions against parish

2   personnel," and generally disrupted church services.  After several incidents and efforts to

3   persuade her to stop, the Church issued Lye a "no trespass" order, told her to worship elsewhere,

4   and informed her that she would be arrested if she returned.  Despite these warnings, Lye

5   attended Mass at Sacred Heart in March of 2010 and July of 2011.  The church called the Lacey

6   police each time, and each time the officers arrested Lye.  Lye sued, claiming the Church and the

7   officers violated her constitutional rights.  The Court previously dismissed Lye's claims against

8   the Church.

9        Lye claims that the officers violated her First and Fourth Amendment rights, and that

10  their actions in arresting her amount to outrage, battery, false arrest, and false imprisonment.

11  Lye also claims that the City of Lacey is vicariously liable for the officers' actions.  Defendants

12  seek dismissal of Lye's claims against the City of Lacey, Police Officers Dave Miller, Ken

13  Kollman, Dave Johansen, and Eric Lever because they did not violate her rights as a matter of

14  law, and even if they did they are entitled to qualified immunity. For the reasons discussed

15  below, the Court GRANTS the Defendants' motion for summary judgment.

16                          **I.      BACKGROUND FACTS.**

17       The Court's previous order discussed the events surrounding this case in additional detail.

18  [Dkt. #26].   The following facts are relevant to the claims against the remaining Defendants.

19  Plaintiff Hui Son Lye was a member of Sacred Heart Catholic Church in Lacey, WA who had

20  been "petitioning" and "voice[ing] her concern to church leaders and to the elected leaders of the

21  [Church]" about wanting to have the Mass given in Korean.  [Dkt. #27 at 3]. Lye continued her

22  "petitioning" until the Archbishop and the Archdiocese's general counsel informed Lye that she

23  was no longer welcome at Sacred Heart as a result of her alleged "threatening and harassing

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 2

1  actions against parish personnel." [Dkt. #27 at 4].  Nevertheless, Lye affirmatively alleges that

2  she did not understand why the Church was excluding her, so she elected to attend Mass at

3  Sacred Heart three days later.  Lye claims she did not cause any disruption, and that, other than

4  the written warning not to enter the premises, nobody asked her to leave.  The following day,

5  Lacey Police Officer Dave Miller (a parishioner) assisted a church staff member in filing a

6  "trespass warning," and he then personally served it on Lye.  This was the extent of Miller's

7  involvement in this case.

8       On March 21, 2010, Lye again attended Mass at Sacred heart despite the trespass

9  warning.  After the service, Officers Kollman and Lever arrested Lye for trespass.  Lye alleges

10  that Kollman and Lever used excessive force during her arrest.  She claims that the officers told

11  her she was trespassing, and immediately placed her under arrest.  Then, "[w]ithout warning,

12  [Officer Kollman] shoved [her] against her car, twisted her arms behind her back and handcuffed

13  her" and " [e]ach [officer] grabbed one of [her] arms and forced her into the car, pushing her

14  head down as she stepped in." [Pl's. Response to Motion for Sum Jdg., Dkt. #33 at 3].

15       Lye initially sued the Church in the spring of 2011 over these incidents, but dismissed the

16  case without prejudice in anticipation that doing so would lead to some sort of reconciliation and

17  again began attending Mass at Sacred Heart.  Instead of reconciling, the Church again told her to

18  stop attending Mass at Sacred Heart or she would be arrested for trespass.  Lye's Counsel

19  responded by telling the Church that the previous trespass warning had expired and that Lye was

20  going to attend Sacred Heart.  The Church then issued another formal trespass warning that

21  Officers Kollman and Johansen served on Lye.  On July 1, 2011, despite these warnings, Lye

22  attended Mass at Sacred Heart and Officers Kollman and Johansen arrested her.  Lye alleges no

23  complaint of excessive force against the officers during this arrest.

24

1    In this suit, Lye claims that Officers Kollman, Lever, and Johansen violated her First

2  Amendment rights of free speech and free exercise of religion, her Fourth Amendment rights

3  against unreasonable seizure, as well as claims of conspiracy, outrage, false arrest and false

4  imprisonment.  Lye claims that Officers Kollman and Lever also violated her Fourth Amendment

5  right against unreasonable force and that they are liable in tort for battery.  Lye brings a claim of

6  outrage against all defendants and a claim that the City of Lacey is liable for the actions of the

7  officers.

8    The Defendants seek Summary Judgment, arguing primarily that the pleadings,

9  documents, and other materials show that they did not violate Lye's rights and that there is no

10 genuine issue of material fact regarding the Lye's claims.  The Defendants also claim that if the

11 officers did violate Lye's rights, they are entitled to qualified immunity.  Lye argues in response

12 that the arrests were illegal because the officers did not have probable cause for arresting her,

13 that the officers used unreasonable force during her arrest, and that both of these issues are

14 questions for the jury.

15    **II.    DISCUSSION.**

16 **A. Summary Judgment Standard.**

17    Summary judgment is appropriate when, viewing the facts in the light most favorable to

18 the nonmoving party, there is no genuine issue of material fact which would preclude summary

19 judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to

20 summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to

21 interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for

22 trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of

23 evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v.*

24 *Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not

1   affect the outcome of the suit are irrelevant to the consideration of a motion for summary

2   judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words,

3   "summary judgment should be granted where the nonmoving party fails to offer evidence from

4   which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at

5   1220.

6   **B. Qualified Immunity Standard.**

7       Qualified immunity "shields an officer from suit when she makes a decision that, even if

8   constitutionally deficient, reasonably misapprehends the law governing the circumstances she

9   confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  Qualified immunity protects

10  officers not just from liability, but from suit: "it is effectively lost if a case is erroneously

11  permitted to go to trial," and thus, the claim should be resolved "at the earliest possible stage in

12  litigation." *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987).  The Supreme Court has

13  endorsed a two-part test to resolve claims of qualified immunity: a court must decide (1) whether

14  the facts that a plaintiff has alleged "make out a violation of a constitutional right," and (2)

15  whether the "right at issue was 'clearly established' at the time of defendant's alleged

16  misconduct." *Pearson v. Callahan*, 553 U.S. 223, 232 (2009).  For a constitutional right to be

17  clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable

18  official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483

19  U.S. 635, 640 (1987).  The Supreme Court has stated that "the relevant, dispositive inquiry in

20  determining whether a right is clearly established is whether it would be clear to a reasonable

21  officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen*, 543

22  U.S. 194, 198–99 (2004).

23      The purpose of qualified immunity is "to recognize that holding officials liable for

24  reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in

1    challenging situations, thus disrupting the effective performance of their public duties." *Mueller*

2    *v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009).  Because "it is inevitable that law enforcement

3    officials will in some cases reasonably but mistakenly conclude that probable cause [to arrest] is

4    present," qualified immunity protects officials "who act in ways they reasonably believe to be

5    lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting *Anderson*,

6    483 U.S. at 631).  An additional purpose of the doctrine is to "protect officers from the

7    sometimes 'hazy border' between excessive and acceptable force." *Brosseau v. Haugen*, 543

8    U.S. 194, 198 (2004)(quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

9    **C. Fourth Amendment Claim.**

10   1.  Unreasonable Seizure.

11   Lye asserts that the officers belief that they had probable cause to arrest her for trespass

12   was unreasonable  because the church was open to the public and she "was not disruptive" on the

13   days of the arrests. Lye argues that this means that she was complying with the lawful conditions

14   of being on the property and that the question of whether the officers had probable cause is a

15   question for a jury.  [Dkt. #33 at 2-3].  The Defendants argue that the evidence does not support a

16   claim that the officers lacked probable cause for an arrest, and that the officers are entitled to

17   qualified immunity in any event.

18   When a warrantless arrest is the subject of a § 1983 action, the Fourth Amendment's

19   prohibition against unreasonable seizures is not violated when there is probable cause for an

20   arrest. *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001).  "The substance of all the definitions of

21   probable cause is a reasonable ground for belief." *Maryland v. Pringle*, 540 U.S. 366 (2003).  In

22   Washington, criminal trespass is defined as "knowingly enter[ing] or remain[ing] unlawfully in

23   or upon premises of another."  Wash. Rev. Code § 9A.52.080.  A person enters or remains

24   unlawfully in or upon premises when "he is not then licensed, invited or otherwise privileged to

so enter or remain." Wash. Rev. Code § 9A.52.010.  It is a defense to a criminal trespass

violation if "the premises were open at the time to members of the public and the actor complied

with all lawful conditions imposed on access to or remaining in the premises."  Wash. Rev. Code

§ 9A.52.090.  A private property owner may revoke an individual's privilege to be on its

property, even if the property is otherwise open to the public.  *State v. Bellerouche*, 129 Wash.

App. 912, 915–16 (2005).  Thus, it is unlawful to enter or remain on private property where the

private property owner has revoked the privilege to be there.

Lye had  been "petitioning" and "voice[ing] her concern to church leaders and to the

elected leaders of the [Church]" about wanting to have the Mass given in Korean.  [Dkt. #27 at

3].  Lye continued her "petitioning" and the Church Defendants revoked Lye's privilege to

attend Sacred Heart—a fact she has admitted.  It is undisputed that Sacred Heart Church is

private property.  It was therefore unlawful for Lye to be on Church property at the times of her

arrests.  Lye's claim that the officers lacked probable cause for her arrest because the church was

"open to the public" and she "complied with all lawful conditions" fail as a matter of law: she

did not comply with all lawful conditions.  She was trespassing.

Even viewing the facts in the light most favorable to Lye, no reasonable jury could return

a verdict in Lye's favor on her unreasonable seizure claim against the City and its officers as a

matter of law. The Defendants' Motion for Summary Judgment on Plaintiffs' fourth amendment

unreasonable seizure claim is therefore GRANTED, and that claim is DISMISSED WITH

PREJUDICE.

2.  Excessive Use of Force.

a.  *Officers Kollman and Lever did not Use Excessive Force When They Arrested Lye.*

Lye claims that Officers Kollman and Lever's used excessive force during her arrest on

March 21, 2010, because she "posed no threat to the safety of anyone" and "had been peacefully

1  leaving the premises." Lye argues that the reasonableness of the officers' use of force is a

2  question for a jury. [Dkt. #33 at 9-10]. The Defendants argue that Lye has not provided any

3  evidence supporting her claim that the officers' use of force was excessive, and that the officers

4  are entitled to qualified immunity in any event.

5          The reasonableness of the force used is determined by "carefully balancing the nature and

6  quality of the intrusion on the individual's Fourth Amendment interests against the

7  countervailing governmental interests at stake." *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th

8  Cir. 2001) (citing *Graham*, 490 U.S. at 396). Courts assess the "quantum of force used to arrest"

9  by considering "the type and amount of force inflicted." *Id.* at 1279–80. The "right to make an

10 arrest… necessarily carries with it the right to use some degree of physical coercion or threat

11 thereof to effect it." *Graham v. M.S. Connor*, 490 U.S. 386, 396 (1989).

12         Lye claims that, after informing her that she was trespassing, Officers Kollman and Lever

13 immediately placed her under arrest. Then, "[w]ithout warning, [Officer Kollman] shoved [her]

14 against her car, twisted her arms behind her back and handcuffed her" and " [e]ach [officer]

15 grabbed one of [her] arms and forced her into the car, pushing her head down as she stepped in."

16 [Dkt. #33 at 3]. Lye does not allege that the officers hurt her, but that their actions were

17 unreasonable under the circumstances because she was leaving the premises "of her own accord"

18 and that they could have "simply issued a citation and allowed her to depart with a court date."

19 [Dkt. #33 at 10].

20         Lye has offered no legal or logical support for her claim that the officers had no

21 Constitutional right to arrest her when she repeatedly and knowingly trespassed on the Church's

22 property. There is no such authority and her claim that the officers used excessive force used in

23 making the lawful arrest fails as a matter of law.

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 8

*b.  The  Officers' Conduct did not Violate a "Clearly Established" Right.*

Lye argues that the officers' use of force during her arrest was not objectively reasonable, and that the officers should have known that their actions constituted excessive force. Defendants argue that even if the officers did use excessive force, the law did not put them on notice that their conduct was clearly unlawful in the circumstances.

For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  The Supreme Court has stated  that "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004).

Even if there is a question of fact about whether the officers used excessive force, the officers are entitled to qualified immunity on this claim because Lye has not identified and cannot identify any clearly established precedent suggesting, much less holding, that an officer cannot arrest someone for trespassing.

Viewed in the light most favorable to her, the evidence could not support a jury verdict in Lye's favor on her excessive force claim against the City and its officers as a matter of law.  The Defendants' Motion for Summary Judgment on Plaintiffs' Fourth Amendment excessive force claim is therefore GRANTED, and that claim is DISMISSED WITH PREJUDICE.

**D. First Amendment Claim.**

Lye asserts a 42 U.S.C. §1983 claim against the officers for violating her First Amendment rights of freedom of worship and freedom of speech.  The Defendants argue that Lye has not provided any evidence supporting her claim that the officers deprived her of her First Amendment rights.

1    In order to succeed on her First Amendment claim, Lye must provide evidence showing

2  that the officers' actions (1) deterred or chilled her speech and (2) such deterrence was a

3  substantial or motivating factor in the officers' conduct.  *Mendocino Envtl. Ctr. V. Mendocino*

4  *Cty.,* 192 F.3d 1283, 1300 (9th Cir. 1999).

5    Lye argues that the defendants "deprived [her] of her first amendment rights of freedom

6  of worship" and that the arrests "also chilled her exercise of freedom of speech" when they

7  arrested her "for peacefully attending church." [Dkt. 27 at 11].  Defendants argue that they had

8  no desire to chill Lye's rights and that they were "acting simply to enforce trespass laws" [Dkt.

9  31 at 7].  Lye offers no evidence—and indeed makes no factual allegations—even suggesting

10 that the officers had any desire or motivation to chill her first amendment rights when they

11 arrested her for violating a no-trespass order.  And there is no reasonable inference from the facts

12 supporting such a claim.

13   Even viewing the facts in the light most favorable to Lye, no reasonable jury could return

14 a verdict in Lye's favor on her First Amendment claim against the City and its officers as a

15 matter of law.  The Defendants' Motion for Summary Judgment on Plaintiffs' First Amendment

16 claim is therefore GRANTED, and that claim is DISMISSED WITH PREJUDICE.

17   **E.  Conspiracy to Violate the First and Fourth Amendment.**

18   Lye asserts a civil conspiracy claim against the City of Lacy and the individual officers.

19 Lye claims that the City of Lacey and its officers acted in concert with the Corporation of the

20 Catholic Archdiocese of Seattle and a church employee named Farrell Gilson (together the

21 "Church Defendants") to deprive Lye of her first and fourth amendment rights "through

22 intimidation and arrest… simply upon the demand of the church that she be arrested.." [Dkt. #27

23 at 9-10].  The Defendants argue that Lye has not provided any evidence that supports a claim that

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 10

1   the City of Lacey or its officers conspired with anyone to deprive Lye of her First and Fourth

2   Amendment rights.

3         To establish a prima facie case for conspiracy, a plaintiff must show: (1) two or more

4   people combined to accomplish an unlawful purpose, or combined to accomplish a lawful

5   purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the

6   conspiracy. *Woody v. Stapp*, 146 Wash. App. 16, 22 (2008).

7         Lye argues that because the trespass warning was unwarranted, the City and the Church

8   Defendants made an agreement to accomplish an unlawful purpose.  The Court dismissed this

9   claim against the Church Defendants in June of 2012.  [Dkt. #26].  As discussed above, the

10  officers' actions were lawful and Lye does not allege that the Defendants conspired with anyone

11  else.  Additionally, and in any event, Lye's response to the Defendant's Motion makes no

12  mention of her conspiracy claim, and she has provided no evidence in support of it.

13        Even viewing the facts in the light most favorable to Lye, no reasonable jury could return

14  a verdict in her favor on her conspiracy claim as a matter of law. The Defendants' Motion for

15  Summary Judgment on Plaintiffs' conspiracy claim is therefore GRANTED, and that claim is

16  DISMISSED WITH PREJUDICE.

17        **F.  Federal Claims against the City of Lacey.**

18        Lye also asserts a *Monell* claim against the City of Lacey.  The Defendants argue that the

19  evidence does not support such a claim as a matter of law.

20        In order to set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff

21  must show that the defendant's employees or agents acted through an official custom, pattern or

22  policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the

23  entity ratified the unlawful conduct.  *See Monell v. Department of Social Servs.*, 436 U.S. 658,

24  690-91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991).  Under

1    *Monell*, a plaintiff must allege (1) that a municipality employee violated a constitutional right;

2    (2) that the municipality has customs or policies that amount to deliberate indifference; and (3)

3    those customs or policies were the "moving force" behind the constitutional right violation.

4    *Board of County Com'rs v. Brown*, 520 U.S. 397, 404 (1997).  A municipality is not liable

5    simply because it employs a tortfeasor.  *Monell*, 436 U.S. at 691.  A municipality may be liable

6    for inadequate police training when "such inadequate training can justifiably be said to represent

7    municipal policy" and the resulting harm is a "highly predictable consequence of a failure to

8    equip law enforcement officers with specific tools to handle recurring situations."  *Long v.*

9    *County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006); *id.* (quoting *Board of County*

10    *Com'rs*, 520 U.S. at 409).

11          In her Amended Complaint Lye alleges that the City has a policy of "arresting people

12    upon receiving a trespass complaint from a third party, without ever substantiating that the party

13    to whom the trespass warning is issued has committed any illegal act or disturbed the peace."

14    [Dkt. #27 at 10].  Lye also alleges that the City of Lacey issues trespass warnings "to prohibit a

15    person from going into a place of public assembly without even requiring the grounds upon

16    which a court could issue a no contact order or anti harassment order." [Dkt. #27 at 10.]

17    Additionally, and in any event, Lye's response to the Defendant's Motion makes no mention of

18    her conspiracy claim, and she has provided no evidence in support of it.

19          There is no evidence whatsoever supporting the existence of such a policy, and even

20    viewing the facts in the light most favorable to Lye, no reasonable jury could return a verdict in

21    her favor on this claim as a matter of law.  The Defendants' Motion for Summary Judgment on

22    Plaintiffs' civil rights claim against the City of Lacey is therefore GRANTED, and that claim is

23    DISMISSED WITH PREJUDICE.

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 12

**G.  Outrage.**

Lye claims that the Defendants' conduct was outrageous and she has suffered severe emotional distress because of it. The Defendants argue that the evidence does not support such a claim as a matter of law.

In order to prevail on an outrage claim, a plaintiff must prove (1) extreme or outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual emotional distress. *Kloepfel v. Bokor*, 149 Wn.2d 192, 194 (2003).  The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Saldivar v. Momah*, 145 Wash. App. 365, 389 (2008).

Lye's response to the Defendant's Motion makes no mention of her outrage claim, and she has provided no evidence in support of it.  Even viewing the facts in the light most favorable to Lye, no reasonable jury could return a verdict in Lye's favor on her outrage claim against the City and its officers as a matter of law.   The Defendants' Motion for Summary Judgment on Plaintiffs' outrage claim against the Defendants is therefore GRANTED, and that claim is DISMISSED WITH PREJUDICE.

**H.  Battery.**

Lye claims that the arresting officers committed battery when they arrested her.  The Defendants argue that the evidence does not support such a claim as a matter of law.

Battery is the intentional infliction of harmful or offensive contact with a person. *McKinney v. Tukwila*, 103 Wn. App. 391, 408-409 (2000).  A lawful touching by an law enforcement officer cannot be considered a battery. *Boyles v.* Kennewick, 62 Wn. App. 174, 176, 813 P.2d 178 (1991).

1    Lye's alleges that the Officers Kollmann and Lever committed battery on March 21,

2   2010, when they "[w]ithout warning, shoved [her] against her car, twisted her arms behind her

3   back and handcuffed her" and that " [e]ach [officer] grabbed one of [her] arms and forced her

4   into the car, pushing her head down as she stepped in."  [ Dkt. #33 at 3].  For the reasons

5   discussed regarding Lye's excessive force claim, there is no evidence to support a battery claim

6   against the City and its officers.

7    Even viewing the facts in the light most favorable to Lye, no reasonable jury could return

8   a verdict in Lye's favor on her battery claim against the City and its officers as a matter of law.

9   The Defendants' Motion for Summary Judgment on Plaintiffs' battery claim is therefore

10   GRANTED, and that claim is DISMISSED WITH PREJUDICE.

11   **I.   False Arrest and False Imprisonment.**

12    Lye claims that, because the officer's did not have probable cause, her arrest was illegal

13   and she was therefore falsely imprisoned.  The Defendants argue that the evidence does not

14   support such a claim as a matter of law.

15    In order to establish a claim for false arrest, a plaintiff must prove that "the defendant

16   violated the plaintiff's right of personal liberty or restrained the plaintiff without legal authority."

17   *Dunn*, 676 F. Supp. 2d at 1195 (citing *Bender v. City of Seattl*e, 99 Wn.2d 582 (1983)).  The

18   elements of false imprisonment are identical except that no legal authority is required for a

19   restraint or confinement to constitute false imprisonment.  *Jacques v. Sharp*, 83 Wn. App. 532

20   (1996).  Liability may be established provided the defendant had an active role in bringing about

21   the unlawful arrest "by some affirmative direction, persuasion, request, or voluntary

22   participation."  *Dunn*, 676 F. Supp. 2d at 1196.  Probable cause is a complete defense to a claim

23   of false arrest and false imprisonment. *Hanson v. Snohomish*, 121 Wn.2d 552, 563, 852 P.2d 295

24   (1993).

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 14

1    As discussed regarding Lye's unreasonable seizure claim, it is undisputed that Sacred

2    Heart Church is private property.  The Church Defendants revoked Lye's privilege to attend

3    Sacred Heart—a fact she has admitted.  It was unlawful for Lye to be on Church property.  Lacy

4    police issued Lye a trespass warning, and she entered Sacred Heart's premises anyway.  Lye's

5    arguments that the officers lacked probable cause for her arrest because the church was open to

6    the public and she complied with all lawful conditions fail because she did not comply with all

7    lawful conditions—she was trespassing.

8    There is no evidence supporting Lye's false arrest and false imprisonment claims against

9    the City and its officers.  Even viewing the facts in the light most favorable to Lye, no reasonable

10   jury could return a verdict in Lye's favor on these claims against the City and its officers as a

11   matter of law.  The Defendants' Motion for Summary Judgment on Plaintiffs' false arrest and

12   false imprisonment claims is therefore GRANTED, and that claim is DISMISSED WITH

13   PREJUDICE.

14   **J. City of Lacey's Vicarious Liability**

15   Lye claims that the City is vicariously liable for its officers' state law torts of Outrage,

16   Battery, False Arrest, and False Imprisonment.

17   "A finding of employee nonliability precludes any finding that the employer is liable,

18   where liability is based solely on the doctrine of respondeat superior." *Spurrel v. Bloch*, 40

19   Wash. App. 854, 869, 701 P.2d 529 (1985)  Because Lye's only state law claim against the City

20   of Lacey is through vicarious liability for the officers alleged Outrage, Battery, False Arrest and

21   Imprisonment, the City of Lacey is only liable if the individual officers are liable.

22   In the absence of a viable claim against any officer, Lye's claims against the city fail as a

23   matter of law.  Defendant's Motion for Summary Judgment on Plaintiff's vicarious liability

24   claim is therefore GRANTED, and that claim is DISMISSED WITH PREJUDICE.

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 15

1

**III.    CONCLUSION**

2     Defendants' Motion for Summary Judgment [Dkt. #31] is **GRANTED**, and all of

3   Plaintiff's remaining claims are **DISMISSED WITH PREJUDICE.**

4     IT IS SO ORDERED.

5     Dated this 8th day of February, 2013.

6

7

8

9                                   Ronald B. Leighton
                                    United States District Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24